UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JOSEPH GELBAND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 09-128-P-H |
| | ) |
| OFFICER DANNY HONDO, et al., | ) |
| | ) |
| Defendants | ) |

**RECOMMENDED DECISION ON MOTIONS TO DISMISS**

Before this court is Joseph Gelband's amended civil rights complaint and a motion (and renewed motion) by Portland Police Officers Daniel Hondo, Jeffrey Tully, Charles Frazier, Timothy Farris, and Roland LaChance to dismiss.  (See Doc. Nos. 10 &12.)  The City of Portland and Maryanne Bailey have also filed a motion to dismiss that adopts and incorporates the other defendants' motion and a separate memorandum articulating their own grounds for dismissal. (Doc. Nos. 13 & 14.)

This action is brought in response to a November 27, 2007, incident at Gelband's residence as a result of which he alleges that he and two of his "longtime friends sustained head wounds."[1]  The head wounds arose in conjunction with a fracas that broke out involving Gelband, Jillian Hilton, and Megan Bates.  Apropos the head wounds sustained by Hilton and Bates, Gelband claims that he was defending himself.  Gelband was indicted on two counts of aggravated assault and these charges were eventually dismissed.[2]  I recommend that the Court grant the Portland Police Officers' motion in part and deny it in part and that it grant the motion to dismiss all claims against Maryanne Bailey and the City of Portland.

---

[1] (Am. Compl. ¶ 8.)
[2] (Am. Compl. ¶¶ 9-10.)

*Discussion*

*Gelband's Articulation of Claims*

Both sets of defendants in their motions to dismiss do their best to fairly construe the claims against them in Gelband's amended complaint. In his responsive memorandum Gelband unequivocally withdraws any claims under 42 U.S.C. § 1985 or § 1986. (Resp. Mots. Dismiss at 5.) He defends only his 42 U.S.C § 1983 claim, including a claim against the City of Portland for municipal liability for any § 1983 violation. (Id. at 2-4.) With respect to the theory of liability he focuses solely on a Fourth Amendment claim stating: "Plaintiff brought suit under 42 U.S.C. Section 1983 to vindicate his right to be free from unreasonable searches and seizures as guaranteed by the Fourth Amendment. It is respectfully submitted that the Amended Complaint herein alleges and sets forth, with sufficient detail, numerous violations of those Fourth Amendment protections." (Id. at 2.) Gelband focuses on his contention that the arresting officers lacked probable cause for his arrest, honing in on his assertion that the police disregarded evidence, including his bleeding head wound, and "all sorts of exculpatory evidence." (Id. at 2-3.) He flatly disowns any claims of malicious prosecution or substantive due process. (Id.)[3]

*Motion to dismiss standard*

Pursuant to Federal Rules of Civil Procedure 12(b)(6), a claim or complaint may be dismissed if it fails to state a claim upon which relief can be granted. In Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937 (2009) the United States Supreme Court summarized: "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim

---

[3] In his surreply Gelband does not change his theory of liability set forth in his responsive motion. (Surreply at 1-2.)

2

showing that the pleader is entitled to relief.'" 129 S. Ct. at 1949. It reiterated, "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544 , 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557).

Pursuant to Iqbal to survive a motion to dismiss for failure to state a 42 U.S.C. § 1983 claim,

> a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [Twombly, 440 U.S.] at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " Id., at 557 (brackets omitted).

129 S.Ct. at 1949. The Iqbal majority expanded: "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged- but it has not 'show[n]'-'that the pleader is entitled to relief.' Fed. Rule Civ. Proc. 8(a)(2)." Id. at 50. Adding a conclusory assertion of a constitutional violation "will not do." Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555).

### *Gelband's Claims*

<u>Fourth Amendment claims of insufficient probable cause</u>

"It is common ground that a warrantless arrest must be based on probable cause." United

3

States v. Brown, 500 F.3d 48, 56 (1st Cir. 2007) (citing United States v. Watson, 423 U.S. 411, 417-18(1976) and United States v. Figueroa, 818 F.2d 1020, 1023 (1st Cir.1987)).

> Proof of probable cause is not to be confused with the more onerous standard of proof of guilt beyond a reasonable doubt. See United States v. Winchenbach, 197 F.3d 548, 555-56 (1st Cir.1999). Rather, probable cause exists when an officer, acting upon apparently trustworthy information, reasonably can conclude that a crime has been or is about to be committed and that the suspect is implicated in its commission. See United States v. Brown, 500 F.3d 48, 56 (1st Cir.2007); United States v. Figueroa, 818 F.2d 1020, 1023 (1st Cir.1987).

Morelli v. Webster, 552 F.3d 12, 21 (1st Cir. 2009).

In his responsive memorandum Gelband relies heavily on Kuehl v. Burtis, 173 F.3d 646 (8th Cir. 1999), describing its fact pattern as "eerily familiar." (Id. at 2.) Therein, the Eighth Circuit stated: "An officer contemplating an arrest is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists." 173 F.3d at 650 (citing Bigford v. Taylor, 834 F.2d 1213, 1218 (5th Cir.)). It also stressed that "law enforcement officers have a duty to conduct a reasonably thorough investigation prior to arresting a suspect, at least in the absence of exigent circumstances and so long as 'law enforcement would not [be] unduly hampered ... if the agents ... wait[ ] to obtain more facts before seeking to arrest.'" Id. (quoting United States v. Woolbright, 831 F.2d 1390, 1394 (8th Cir.1987)). Although the Panel noted that "[a]n officer need not conduct a 'mini-trial' before making an arrest," id. (citing Brodnicki v. City of Omaha, 75 F.3d 1261, 1264 (8th Cir.) and Morrison v. United States, 491 F.2d 344, 346 (8th Cir.1974)), it cautioned that "probable cause does not exist when a 'minimal further investigation' would have exonerated the suspect.'" Id. (quoting Bigford, 834 F.2d at 1219) (string citation omitted). The Panel rejected the defendant's argument that he was entitled to qualified immunity. Id. at 651.

<u>Allegations Pertaining to Portland Police Officers Daniel Hondo, Jeffrey Tully, Charles Frazier, Timothy Farris, and Roland LaChance</u>

The complaint indicates that an incident occurred at Gelband's residence on approximately November 27, 2007, during which he and two 'longtime friends", Jillian Hilton and Megan Bates sustained head wounds. (Am. Compl. ¶ 8.)  He concedes that after he was assaulted by Ms. Hilton and Ms. Bates he defended himself. (<u>Id.</u> ¶ 10.)  Hilton and Bates were transported to Maine Medical Center, where they were treated for 'superficial' head wounds (presumably as a consequence of Gelband's efforts at self-defense). (<u>Id.</u> ¶ 8)  Gelband was charged with and subsequently indicted on two counts of aggravated assault which charges were later dismissed. (<u>Id.</u> ¶¶ 9, 11.)  The complaint indicates that Hilton and Bates became unavailable to or uncooperative with the authorities, and that there were inconsistencies in the victims' individual versions of events.  (<u>Id.</u>  ¶¶ 45, 47, 48, 49, 59.)

Gelband further complains that Officer Hondo arrested him, yet did not ask how he received his bloody head wounds and then filed a report making no mention of Gelband's injuries. (<u>Id.</u> ¶ 13.) The complaint indicates that Officer Tully interviewed Ms. Bates and that Officer Frazier interviewed Ms. Hilton at the hospital.  (<u>Id.</u> ¶ 12.) The complaint contends that five reports were made, including written statements executed by each of the two victims, as well as two police reports prepared by Officers Tully and Hondo, one of which incorporated Officer Frazier's report.  (<u>Id.</u>  ¶ 15.) The complaint asserts that none of the five reports references the bleeding wounds on Gelband's forehead. (<u>Id.</u> ¶16.)   Gelband reports that he was unaware that he had bleeding wounds.  He describes himself as dazed and states he was offered no medical treatment or exam and was illegally held in jail even after bail was posted.  (<u>Id.</u> ¶ 30.)

Gelband does concede that Officer Keller took photos of Gelband at the scene prior to the making of the police reports.  (<u>Id.</u> ¶ 14.)  With respect to the the allegation that the officers

5

concealed or withheld exculpatory evidence  Gelband complains that a grainy, miniaturized, black and white photocopy of Gelband was furnished to him at arraignment and contends that it was deliberately doctored to conceal his wounds  (id. ¶ 27), but the complaint acknowledges that exculpatory color photos plainly showing plaintiff's bloody wounds were ultimately produced by the prosecutor ADA Tice (who is not a moving defendant) (id. ¶ 28).[4]

Gelband's allegations concerning falsified reports are as follows. Gelband claims that Officers Frazier and Tully fabricated sensational sexual allegations which the alleged victims deny having made and deny ever occurred.  (Am. Compl. ¶ 22.)   Gelband also claims that Officer Frazier obtained Hilton's signature on a false statement while she was intoxicated, dazed and undergoing medical treatment and that he could not help but observe that Hilton signed the statement without reading it.  (Id. ¶ 23.)  Hilton allegedly explained to Detective Bailey that Officer Frazier had obtained her signature on her witness statement while she was in no condition to read it. Hilton unequivocally denied having made any allegations pertaining to sex, and accused Officer Frazier of fabricating them.  (Id. ¶ 43.)  The complaint acknowledges that Detective Bailey documented and later testified that Ms. Hilton had mis-communicated her 'impression' or 'perspective'. (Id. ¶ 45.) As with the photographs, the prosecutor produced Detective Bailey's report to Gelband.  (Id. ¶ 46.)  As the defendants point out, Gelband's allegations concerning falsified reports centers on a controversy about whether Ms. Hilton believed that his pre-injury intentions were sexually oriented, when the only real issue is whether the arresting officer(s) held a reasonable belief that he committed the crime of aggravated assault

---

[4]    The defendants  insist that the actual controversy revolves around Gelband's objection to the timing of the prosecutor's production of the photographs during the discovery process, which fails to comprise a claim against the Officers for which relief can be granted pursuant to § 1983.  Defendant Tice has not moved for dismissal as of this date.  With respect to the claims against Tice, however, I caution Gelband that his representations to the Court as to what counts he is and is not maintaining apply to this entire action including the aspect of this suit that pertains to Tice.

when causing the injuries to the alleged victims. The falsified report allegations have two aspects focusing on a written statement that Ms. Hilton signed during the police investigation, the clarity of her characterization of some pre-assault activity by Gelband, and whether she read her statement carefully before signing it. (Reply Mem. at 5.)

Now that Gelband has clearly defined the nature of his 42 U.S.C. § 1983 claim as one brought under the Fourth Amendment and based on his assertions that the arresting officers lacked probable cause to arrest him, it is clear that his complaint does not state a claim as to Defendants Timothy Farris and Roland LaChance. These two defendants are not identified in his § 1983 allegations. In his response memorandum Gelband does cite allegations of "false police reports, fabricated statements, suborned perjury and in the matter of defendant officers LaChance and Far[r]is, an illegal search." (Id. at 3.) The only allegations as to these two defendants pertain to conduct after the charges in question were dismissed. (Am. Compl. ¶¶ 67-72.)[5] But these allegations have nothing to do with the November 27, 2007, arrest determination and, for the reasons discussed below as to Gelband's claim against Maryanne Bailey, LaChance and Farris are entitled to dismissal.

Defendants Hondo, Tully, and Frazier were involved in one way or the other in responding to the scene of the trio's dispute at Gelband's residence and conducting the initial interviews. Although many of Gelband's allegations are entirely conclusory,[6] Gelband has just

---

[5] The amended complaint's only allegations as to LaChance and Farris are contained under the label "Retaliation." (Am. Compl. ¶¶ 67-72.) There is no mention of this theory of liability in Gelband's response to the motion to dismiss or in his surreply. I consider the claim waived.

[6] Gelband complains that the officers chose not to conduct a reasonably thorough investigation either prior to or after arresting him. (Id. ¶ 34.) In short, the officers disregarded basic and plainly exculpatory evidence, falsified reports and failed to perform the minimal investigation required to obtain basic facts. (Id. ¶ 25.) That is, they closed their eyes to his wounds, plainly caused by a weapon (id. ¶ 17); ignored easily accessible evidence, including the alleged weapon (id. ¶ 18); failed to elicit exculpatory evidence by asking the alleged victims about Gelband's wounds or the weapon used to inflict them (id. ¶¶ 19, 20); disregarded numerous material inconsistencies and contradictions between the alleged victims' accounts (id. ¶ 21); disregarded outstanding warrants for Hilton's arrest, warrants that went unexecuted and unreported (id. ¶¶ 24, 49); and they not only disregarded evidence, they concealed

barely stated a plausible Fourth Amendment claim as against these defendants. I reach this conclusion in view of his allegations that in responding to the scene of a fracas between three acquaintances Gelband's own injuries -- which are allegedly documented -- were ignored by the responding officers, the officers did not attempt to investigate an alleged weapon on the scene, and they based the arrest on distortions reflected in their reports.[7] As with Kuehl, at this juncture the defendants are not entitled to dismissal of the complaint. See 173 F.3d at 650.

<u>Allegations Pertaining to Detective Maryanne Bailey</u>

The allegations of the complaint that specifically pertain to Detective Maryanne Bailey are as follows. Bailey is a detective with the Portland Police Department. (Am. Compl. ¶ 5.) Bailey personally saw Gelband's wounds at the Cumberland County Jail and had his photographs taken, thereby becoming aware that false reports had been filed by the officers, yet she neither reported nor investigated the wounds or the false reports. (Id. ¶ 31.) She never required the officers to amend the report or referred the matter to her supervisors. (Id. ¶ 32.) Bailey's report deals with events on January 10, 2008, and her report is dated March 20, 2008. (Id. ¶40.) Gelband construes this as a delay by Bailey of reporting "plainly exculpatory evidence." (Id.) Her report, Gelband continued, "consists primarily of a timeline of the alleged victims' testimony before the grand jury. The investigative portion of her report is 33 words long and was prepared at the rate 3.3 words per week." (Id. ¶ 41.) According to Gelband, Hilton explained to Bailey that Officer Frazier had obtained her signature on her witness statement while she was in no condition to read it. Hilton unequivocally denied having made any allegations pertaining to sex; she accused Officer Frazier of fabricating them. (Id. ¶ 43.)

---

and withheld it. (Id. ¶ 26.) Many of these statements are no more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." Iqbal, 129 S. Ct. at 1949 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544 , 555 (2007)).

[7] By grouping the defendants in this manner I do not mean to suggest that Gelband sufficiently alleges that each of these three defendants is equally responsible for all this conduct.

Both in her report and in her testimony Bailey covered up Frazier's fabrications by misrepresenting them as some sort of innocent miscommunication by Hilton of her 'impression' or 'perspective.' (Id. ¶ 45.)   Detective Bailey's report states that the alleged victims failed to keep appointments with her the day after their grand jury testimony.  The alleged victims employed an obvious "lie and fly" strategy and ceased their cooperation immediately after testifying. (Id. ¶ 47.)

All of these allegations pertain to Bailey's investigation of the incident <u>after</u> the police officers arrested and detained Gelband.  Gelband's beef with Bailey (as with Officers Farris and LaChance) is based solely on the post-arrest activities of law enforcement related to the furtherance of the criminal case against Gelband.  At best this alleges a claim of malicious prosecution.   In <u>Wallace v. Kato</u> the United States Supreme Court noted:

> We have never explored the contours of a Fourth Amendment malicious-prosecution suit under § 1983, see <u>Albright v. Oliver</u>, 510 U.S. 266, 270-271, 275 (1994) (plurality opinion), and we do not do so here. See generally 1 M. Schwartz, Section 1983 Litigation § 3.18[C], pp. 3-605 to 3-629 (4th ed.2004) (noting a range of approaches in the lower courts). Assuming without deciding that such a claim is cognizable under § 1983, petitioner has not made one. Petitioner did not include such a claim in his complaint. He in fact abandoned a state-law malicious-prosecution claim in the District Court, and stated, in his opposition to respondents' first motion for summary judgment, that "Plaintiff does not seek to raise ... a malicious prosecution claim under § 1983[.]"

549 U.S. 384, 390 n. 2 (2007) (record citation omitted).   Even if Gelband, unlike Wallace, has not expressly disavowed a malicious prosecution 42 U.S.C. § 1983 claim, Bailey would be entitled to qualified immunity given that there is no doubt, in view of <u>Wallace</u>, "'it has not been clearly established that malicious prosecution violates any constitutional or statutory right.'"  <u>Pitt v. District of Columbia</u>, 491 F.3d 494, 512 (D.C. Cir. 2007) (quoting <u>Moore v. Valder</u>, 65 F.3d 189, 195 (D.C.Cir.1995)); <u>see also</u>  <u>Rodriguez-Mateo v. Fuentes-Agostini</u>, 66 Fed. Appx. 212, 213-214, 2003 WL 21243479, 1 (1st Cir. May 28, 2003) (unpublished).

Municipal Liability

The First Circuit summarized in Estate of Bennett v. Wainwright:

[M]unicipal liability is not vicarious. Municipalities can be held liable only if municipal employees commit unconstitutional acts and those actions are shown to have been caused by a "policy or custom" of the government. Martínez-Vélez v. Rey-Hernández, 506 F.3d 32, 41 (1st Cir.2007) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)). Such custom "must be so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice." Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir.1989). With respect to a failure to train claim, only if the "municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." City of Canton v. Harris, 489 U.S. 378, 389 (1989).

548 F.3d 155, 177 (1st Cir. 2008).[8]

With regards to the City of Portland's potential liability, Gelband insists:

> The Amended Complaint herein clearly alleges, and plaintiff intends to prove that, inter alia, false and fabricated reports are customary and that "the City of Portland has long been aware of the deficient reporting practices, insufficient training and lack of supervision of Portland Police Officers. The City has shown deliberate indifference to said reporting practices and the need for more and better training of Supervision." Paragraph 65 of Amended Complaint.

(Id. at 4; see also Am. Compl. ¶ 36, 37.) This is the only allegation that he relies on for his theory of municipal liability and it is entirely conclusory as to the key components of a municipal liability claim; these conclusory assertions of a constitutional violation "will not do." Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555). Gelband has simply not nudged his claims of municipal liability "across the line from conceivable to plausible." Id. at 1951 (quoting Twombly, 550 U.S. at 570).

---

[8] As I have mentioned that Bailey would be entitled to qualified immunity even if Gelband was pursuing a malicious prosecution claim under the constitution against her, I note that, "'it is not impossible for a municipality to be held liable for the actions of lower-level officers who are themselves entitled to qualified immunity.'" Id. (quoting Joyce v. Town of Tewksbury, 112 F.3d 19, 23 (1st Cir.1997) (en banc)).

*Conclusion*

I recommend that the court grant the motions to dismiss (Doc. Nos. 10 &12) as to all claims against Officers LaChance and Farris and to all claims against Officers Hondo, Tully, and Frazier <u>except</u> a Fourth Amendment claim that Gelband was arrested without probable cause.  I further recommend that the Court grant the motion to dismiss all claims against Maryanne Bailey and the City of Portland (Doc. No. 13).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

June 16, 2009.