UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JOSEPH F. GELBAND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 09-128-P-H |
| | ) |
| OFFICER DANNY HONDO, et al., | ) |
| | ) |
| Defendants | ) |

**RECOMMENDED DECISION ON MOTION FOR SUMMARY JUDGMENT
FILED BY MATTHEW TICE (Docket No. 47)**

This action is brought in response to a November 27, 2007, incident at Joseph Gelband's residence as a result of which he alleges that he and two of his "longtime friends sustained head wounds." The head wounds arose in conjunction with a fracas that broke out involving Gelband, Jillian Hilton, and Megan Bates. With respect to the uncontested head wounds sustained by Hilton and Bates -- both of whom required numerous stitches -- Gelband claims that he was defending himself. Gelband was indicted on two counts of aggravated assault and these charges were eventually dismissed.

Assistant District Attorney Matthew Tice has moved for summary judgment. In his response to that motion, Gelband asserts that Tice is liable under 42 U.S.C. § 1983 because he conspired to deprive Gelband of his liberty without due process of the law. In particular he contends that Tice and co-defendant Detective Maryanne Bailey conspired to bring the stories of the two alleged victims into "close alignment—ultimately suborning both women's perjury."[1]

---

[1] (Resp. Mot. Summ. J. at 2.)

Gelband maintains that this conspiracy bore fruit when the grand jury indicted him.[2]  I recommend that the Court grant Tice summary judgment.[3]

## DISCUSSION

*Parameters of Gelband's Action*

In a previous recommendation on motions to dismiss I observed that Gelband focused on his contention that the arresting officers lacked probable cause for his arrest, honing in on his assertion that the police disregarded evidence, including his bleeding head wound, and "all sorts of exculpatory evidence."  In that decision I explained:

> Both sets of defendants in their motions to dismiss do their best to fairly construe the claims against them in Gelband's amended complaint. In his responsive memorandum Gelband unequivocally withdraws any claims under 42 U.S.C. § 1985 or § 1986. (Resp. Mots. Dismiss at 5.) He defends only his 42 U.S.C § 1983 claim…. (Id. at 2-4.) With respect to the theory of liability he focuses solely on a Fourth Amendment claim stating: "Plaintiff brought suit under 42 U.S.C. Section 1983 to vindicate his right to be free from unreasonable searches and seizures as guaranteed by the Fourth Amendment. It is respectfully submitted that the Amended Complaint herein alleges and sets forth, with sufficient detail, numerous violations of those Fourth Amendment protections." (Id. at 2.) Gelband focuses on his contention that the arresting officers lacked probable cause for his arrest, honing in on his assertion that the police disregarded evidence, including his bleeding head wound, and "all sorts of exculpatory evidence." (Id. at 2-3.) He flatly disowns any claims of malicious prosecution or substantive due process. (Id.)

Gelband v. Hondo. Civ. No. 09-128-H, 2009 WL 1686832, 1 (D.Me. June 16, 2009) (footnote omitted).  I noted that "in his surreply Gelband does not change his theory of liability set forth in his responsive motion.  (Surreply at 1-2.)."  Id at 1 n.3.  I further remarked:  "With respect to the claims against Tice, however, I caution Gelband that his representations to the Court as to what

---

[2] (Id.)
[3] Gelband has filed his own motion seeking partial summary judgment but that pleading does not address his claims against Tice.

counts he is and is not maintaining apply to this entire action including the aspect of this suit that pertains to Tice." (Id. at 3.)

In his objection to the recommended decision Gelband stressed that his "Fourth Amendment allegations of illegal search and seizure are the most appropriate Section 1983 claims imaginable." (Obj. Rec. Dec. at 6, Doc. No. 25.) He did not object to my reasoning vis-à-vis the limiting of his claim to a Fourth Amendment claim for arrest without probable cause.

Despite my earlier recommended decision expressly clarifying that Gelband had limited his claim to a Fourth Amendment claim for arrest without probable cause, Gelband now attempts to press a Fourteenth Amendment substantive due process theory. (Resp. Mot. Summ. J. at 8-11.) He describes his earlier limitation of his action as one excluding a theory of malicious prosecution or substantive due process as an error. (Id. at 8.) He "submits that he remains entitled to rights guaranteed by the 14th Amendment and all other constitutional protections as covered by 42 U.S.C. Section 1983." (Id. at 9.)

I submit that Gelband cannot now defend constitutional claims beyond his Fourth Amendment right not to be seized without probable cause.[4] I recognize that "the law of the case

---

[4] As I observed in my prior recommended decision, at best Gelband alleges a claim of malicious prosecution vis-à-vis, in this case, Tice. In Wallace v. Kato the United States Supreme Court noted:
> We have never explored the contours of a Fourth Amendment malicious-prosecution suit under § 1983, see Albright v. Oliver, 510 U.S. 266, 270-271, 275 (1994) (plurality opinion), and we do not do so here. See generally 1 M. Schwartz, Section 1983 Litigation § 3.18[C], pp. 3-605 to 3-629 (4th ed.2004) (noting a range of approaches in the lower courts). Assuming without deciding that such a claim is cognizable under § 1983, petitioner has not made one. Petitioner did not include such a claim in his complaint. He in fact abandoned a state-law malicious-prosecution claim in the District Court, and stated, in his opposition to respondents' first motion for summary judgment, that "Plaintiff does not seek to raise ... a malicious prosecution claim under § 1983[.]"

549 U.S. 384, 390 n. 2 (2007) (record citation omitted). Quite recently the Seventh Circuit, summarized:
> The Supreme Court has neither recognized nor foreclosed the possibility of plausibly asserting a right not to be prosecuted without probable cause under § 1983, either under the Fourth Amendment, Wallace v. Kato, 549 U.S. 384, 390 n. 2 (2007) ("We have never explored the contours of a Fourth Amendment malicious-prosecution suit under § 1983."), or the Fourteenth Amendment's Procedural Due Process Clause. See Albright v. Oliver, 510 U.S. 266, 316 (1994) (Stevens, J., dissenting) (finding that "in the aggregate, [the Albright Court's fractured] opinions

3

doctrine [does not] pose an insurmountable obstacle," Castro v. United States, 540 U.S. 375, 384 (2003), to Gelband's efforts to renew or reinvent constitutional claims. However, given the particular configurations of this civil rights law suit and the express joining of the issues of precisely what theories of recovery Gelband was pursuing, I am holding Gelband to his previous disclaimer of all claims save the violation of his Fourth Amendment right to be free from seizure without probable cause.

### *Summary Judgment*

Tice is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that [as] the movant [he] is entitled to judgment as a matter of law." Fed. R. Civ. P.56(c)(2). The "facts are taken in the light most favorable to" Gelband and all inferences are drawn in his favor. Agusty-Reyes v. The Dept. of Educ. of Puerto Rico, __ F. 3d, __, __, 2010 WL 1293906, 1- 2 (1st Cir. Apr. 6, 2010).

Under the particular circumstances of this motion, I conclude that it is unnecessary to set forth all of the competing factual statements to justify my recommended disposition. This is because -- even crediting all of Gelband's responsive facts, his additional facts, and the facts set forth of his motion for partial summary judgment addressed to Officers Hondo and Tully -- there are two insurmountable legal hurdles to his claim against Tice.

In his response to Tice's motion for summary judgment Gelband insists that Tice conspired with Detective Bailey, including discussing witness statements to iron-out inconsistencies between

---

do not reject [the notion that] the Due Process Clause of the Fourteenth Amendment constrains the power of state governments to accuse a citizen of an infamous crime.").
Tully v. Barada, __ F.3d __, __, 2010 WL 938085, 1 (7th Cir. Mar. 17, 2010); see also Pitt v. District of Columbia, 491 F.3d 494, 512 (D.C. Cir ,2007).  There is no reason to wade further into this thicket for purposes of this case because Gelband is not arguing that a malicious prosecution claim be inserted into this mire. Instead, he has only specifically identified substantive due process as the constitutional right he purportedly reserves.
   I gratuitously note that with regards to his substantive due process theory apropos Tice, Supreme Court law is clearly against him.  See Albright v. Oliver, 510 U.S. 266, 274-75 (1994).

the two women who alleged that Gelband had assaulted them and that these efforts bore fruit when the grand jury indicted him. (Resp. Mot. Summ. J. at 2.) He identifies the inconsistencies as concerning "<u>where</u> the fracas occurred, its <u>duration</u>, the <u>sequence</u> of events, the <u>motive</u>, as well as the circumstances immediately preceding the alleged assault." (<u>Id.</u>) He also insists that, independent of the conspiracy with Bailey, Tice suborned Megan Bates's perjury during the grand jury proceedings. (<u>Id.</u> at 3.) He further faults Tice for not attempting to locate the two victim/witnesses after the indictment (<u>id.</u> at 5-6), even though the failure to bring the witnesses to court apparently contributed to the dismissal of the felony charges against him.

There is no dispute that in the early hours of November 27, 2007, Officers Hondo and Tully compared what the two complainants (Hilton and Bates) and Gelband had told them to determine whether there was probable cause to arrest Gelband and to determine the offenses he should be charged with. (SMF ¶ 40; Resp. SMF ¶ 40.) Officer Hondo agreed that "[p]robable cause exists when the facts and circumstances within the police officers' knowledge, and of which they had reasonably trustworthy information, were sufficient to warrant a prudent person in believing that the defendant had committed or was committing an offense." (SMF ¶ 41; Resp. SMF ¶ 41.) After conferring, the two officers charged Joseph Gelband with two counts of "aggravated assault," because both women had been struck with a weapon (a telephone) and had sustained "serious injuries." (SMF ¶ 42; Resp. SMF ¶ 42.)

Detective Bailey met with ADA Matthew Tice on November 28, 2007, and he approved two counts of aggravated assault against Gelband. (SMF ¶ 52; Resp. SMF ¶ 52; SAMF ¶ 4.) In support of his theory that Tice was somehow responsible for the infringement of his Fourth Amendment rights, Gelband relies in part on Detective Bailey's report of the investigation in which she states: "On 11/28/2007 I …met with Assistant District Attorney Matthew Tice in order for him to review this complaint. Upon review, ADA Tice approved two counts of Aggravated Assault against the

5

suspect, Joseph Gelband."  (Doc. No. 48-3 at 1.)  In the portion of the Bailey deposition also cited by

Gelband, the following exchanged occurred:

> Q.	…According to your report, as I understand it, you met with Assistant District Attorney Matthew Tice on November 28; is that correct?
> A.	Yes.
> Q.	And as of that date he approved two counts of aggravated assault against the suspect Joseph Gelband, didn't he?
> A.	Yes, he did.
> Q.	And those two counts of assault were based on the November 27, 2007, incident at his apartment 540 Congress Street in Portland, Maine involving Jillian Hilton and Megan Bates, correct?
> A.	Yes.
> Q.	Now, when you met with … Matthew Tice on November 28, 2007, had you already interviewed Joseph Gelband?
> A.	 No.
> Q.	So, in other words, would it be fair to say that ADA Tice wanted you, as part of your investigation, to get Mr. Gelband's side of the story?
> A.	I would think he would, but I don't remember a specific conversation regarding me interviewing him.
> Q.	Okay, let me clarify that.  So, in other words, ADA Tice did not instruct you to go to the Cumberland County Jail and interview Mr. Gelband to get his side of the story, correct?
> A.	Correct.  Not that I recall.
> Q.	But you thought that as a matter of appropriate police work that that is something that you should do?
> A.	Yes.

(Bailey Dep. at 37-38, Doc. No. 48-3.)  There is no deposition of Tice that I could locate on the

docket.   There are his answers to interrogatories with the following question and answer:

> 11.	Kindly give the date, approximate time, and the substance of each and every discussion you had with Detective Maryann Bailey with regard to the witness statement of Jillian Hilton….
> **ANSWER**:     I have no independent recollection of the dates and time of my conversation with Detective Maryann Bailey.  The information requested by this Interrogatory is contained in my prosecution file, a copy of which was provided to you months ago.  In general, my practice is to meet with Officers in felony cases, like Mr. Gelband's, on the date of the intake.  In this case, my best recollection is that I met with Detective Bailey on or about November 28, 2007.  The substance of my conversation with her is contained  in the Police Reports prepared by the Portland Police Officers who responded to Mr. Gelband's residence … on November 27, 2007.  I also spoke with Detective Bailey during and after the Grand Jury proceedings relating to the criminal charges against Mr. Gelband.

(Tice Ans. Pl.'s  Interrogs. ¶ 11, Doc. No. 48-9.)

6

The first legal obstacle to Gelband's claims against Tice is that Tice was not involved in the decision to arrest Gelband without a warrant and did not have any decision-making role in the probable cause determination leading to Gelband's complained-of seizure.

The second legal obstacle is that, even if Gelband could somehow reach Tice's post-arrest conduct via Gelband's Fourth Amendment seizure claim, see Martinez-Rodriguez v. Guevara, 597 F.3d 414, 420 (1st Cir. 2010), in the context of this civil rights action Tice would clearly be entitled to absolute immunity for the conduct, even as it is described by Gelband. "Like witnesses, prosecutors and other lawyers were absolutely immune from damages liability at common law for making false or defamatory statements in judicial proceedings (at least so long as the statements were related to the proceeding), and also for eliciting false and defamatory testimony from witnesses." Burns v. Reed, 500 U.S. 478, 489-90 (1991) (collecting cases); Reid v. New Hampshire, 56 F.3d 332, 336 -38 (1st Cir. 1995). Burns made it clear: "This immunity extended to 'any hearing before a tribunal which perform[ed] a judicial function,' id. at 490 (citing W. Prosser, Law of Torts § 94, pp. 826-827 (1941) and Veeder, Absolute Immunity in Defamation, 9 Colum.L.Rev. 463, 487-488 (1909)), and noted the "widespread agreement among the Courts of Appeals that prosecutors are absolutely immune from liability under § 1983 for their conduct before grand juries," id. at 490 n.6.  And the United States Supreme Court's Van de Kamp v. Goldstein, __ U.S. __, 129 S. Ct 855 (2009) reaffirmed and extended the protection of absolute immunity for prosecutorial decisions even further afield from preparation for and participation in judicial proceedings than those actions taken by Tice as described by Gelband. The Supreme Court emphasized the absolute immunity should be extended when the prosecutorial conduct in question required "legal knowledge and the exercise of related discretion." Id. at 862.

Gelband attempts to characterize Tice's actions with respect to the grand jury testimony as "investigatory." (Resp. Mot. Sum. J. at 7-8.)  And he maintains in his response memorandum that Tice somehow enticed Bailey to proceed with the charges.  It is true that, as Gelband points out, Burns articulated a potential exception for prosecutorial absolute immunity when a prosecutor gives legal advice to the police, see Burns, 500 U.S. at 496, and rejected the argument "that giving legal advice is related to a prosecutor's roles in screening cases for prosecution and in safeguarding the fairness of the criminal judicial process," id. at 495.  However, in making this argument Gelband is attempting to mold his facts to this articulation of the law in a summary judgment context.  I reiterate that there is no dispute that Tice did not participate at all in the investigative decision to arrest Gelband without a warrant.  Compare Hoog-Watson v. Guadalupe County, 591 F.3d 431, 438 (5th Cir. 2009).  Nor is this a case in which the prosecutor personally participated in crafting a warrant application towards an arrest.  See Kalina v. Fletcher, 522 U.S. 118, 129-31 (1997).  The record Gelband relies on for these pleadings is clearly not a basis to draw an inference that Tice somehow advised Bailey to pursue the charges against Gelband; it was simply a run-of-the-mill meeting between the detective and the prosecutor to screen the case once the arrest had been made, a review that on Tice's part required legal knowledge and the exercise of discretion as emphasized in Van de Kamp.  Even at the post-discovery summary judgment stage of this litigation, Gelband has no record evidence to justify sending this aspect of his claim to a jury.

With respect to the grand jury proceedings, Tice reviewed Hilton's and Bates's victim statements and the Portland Police officers' reports concerning Gelband's assault and found no "serious material shortcomings or lapses in the investigation."  (SMF ¶ 65; Tice Ans. Pl.'s Interrog. ¶¶ 18, 24-25.)  He presented the State's case to the Grand Jury and both Hilton and Bates testified. (SMF ¶ 66; Resp. SMF ¶ 66.)  The Grand Jury indicted Gelband on two counts of aggravated assault. (SMF ¶ 67; Resp. SMF ¶ 67.)  Bailey is not aware of any evidence tending to suggest that ADA

Matthew Tice withheld exculpatory evidence from Joseph Gelband and she herself did not withhold any such evidence.  (SMF ¶ 75; Bailey Dep. at 45.)   Detective Bailey has worked with ADA Matthew Tice on many occasions throughout her career. (SMF ¶ 76; Resp. SMF ¶ 76.)   She has never known ADA Tice to lie to her, to ask her to engage in a conspiracy, to falsify evidence, or to fabricate evidence to convict a suspect of a crime.  (SMF ¶ 77; Bailey Dep. at 21.)[5]  I have also read the transcript of the grand jury testimony (see Grand Jury Tr., Doc. No. 80-8) and considered the related statement of facts on which Gelband relies to refute Tice's entitlement to judgment vis-à-vis his grand jury conduct (see SAMF ¶¶ 34, 35 & 36).  It is evident that Tice was acting well within the parameters of his duties as a prosecutor in front of the grand jury when conducting the questioning of Bailey, Bates, and Hilton.  This transcript is also striking evidence that Tice did not shy away from drawing out the inconsistencies between the narratives of Bates and Hilton and the internal holes in their respective version of events during the grand jury proceedings.  See Burns, 500 U.S. at 490; id. at 490 n. 6.  Counter to Gelband's characterization, the grand jury was apprised of the rather inconsistent and incomplete Hilton and Bates versions of the events in question; nevertheless it decided to indict Gelband.

## *Conclusion*

For these reasons, I recommend that the Court grant Tice's motion for summary judgment.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

---

[5] With regards to Tice's  Statements of Facts Paragraphs 65, 75, and 77, Gelband cites his "Counter Statement of Material Facts" in toto.

9

       Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

                                    /s/ Margaret J. Kravchuk
                                    U.S. Magistrate Judge

April 23, 2010.